## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

|  |  |  |
|---|---|---|
| LESLIE BOYD, | : | CIVIL ACTION |
|  | : |  |
| Plaintiff, | : |  |
| v. | : | No. 17-3195 |
|  | : |  |
| CITY OF PHILADELPHIA, et al., | : |  |
|  | : |  |
| Defendants. | : |  |

_____

### ORDER

**AND NOW,** this 29th day of May, 2018, upon consideration of "Corizon Health, Inc.'s Motion to Dismiss the Complaint of Leslie Boyd for Failure to State a Claim Pursuant to Federal [Rule] of Civil Procedure 12(b)(6)" (Doc. No. 3), City of Philadelphia's "Motion to Dismiss for Failure to State a Claim" (Doc. No. 5), MHM Services, Inc.'s "Motion to Dismiss Plaintiff's Complaint" (Doc. No. 8), and Plaintiff's respective Responses thereto (Doc. Nos. 6, 7, & 10), I find as follows:

## FACTUAL AND PROCEDURAL BACKGROUND[1]

1. Plaintiff, Leslie Boyd, filed this lawsuit on May 24, 2017, in the Court of Common Pleas of Philadelphia County, following an alleged injury he suffered while incarcerated at the Curran-Fromhold Correctional Facility. Plaintiff sued the Correctional Facility,[2] the City

---

[1] When deciding a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court must assume the veracity of all well-pleaded facts found in the complaint. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). I assume that all the facts found in the Complaint are true.

[2] Defendant City of Philadelphia states that the Correctional Facility and the City are the same legal entity. (Mot., Doc. No. 5, at n.1.) Because Plaintiff does not contend otherwise, I will consider them the same party, which I refer to hereinafter as "the City."

of Philadelphia, and two corporations that provide medical services at the Correctional

Facility, Corizon Health, Inc. ("Corizon") and MHM Services, Inc. ("MHM"). (Compl.

¶¶ 2-5.)

2. Plaintiff's Complaint alleges the following:

- In April 2016, Plaintiff was an inmate at the Correctional Facility. Plaintiff had a physical disability requiring ambulatory assistance in the form of "a wheelchair, grab bars, and other ambulatory and steadying [devices] and other medical assistance." (Id. ¶ 6.)

- In or around this time, Plaintiff suffered a fall in his cell, due to "dangerous conditions of property, improper medication administration and improper medical equipment provided by defendants . . . ." The fall injured Plaintiff's head and neck. (Id. ¶ 7.)

- Plaintiff then "asked for medical attention repeatedly, but was refused, and therefore passed out and went into a coma, requiring extensive medical treatment." (Id.)

- Plaintiff was taken to Torresdale Hospital. While Plaintiff was being treated, Correctional Facility staff "destroyed or otherwise disposed of Plaintiff's paperwork and personal belongings in his prison cell . . . ." (Id.)

- During Plaintiff's time at the Correctional Facility, he received "inadequate and improper medical treatment, [devices] and medication, despite requests for proper medical care." (Id. ¶ 10.) (Plaintiff's Complaint does not specify whether this allegation refers only to the incident described above, or whether there were additional instances of inadequate medical care.)

- "Defendants acted with malice against Plaintiff based on his having a disability and being an African-American." (Id. ¶ 8.)

- As a result of the above conduct, Plaintiff suffered physical injuries, including "back and neck injuries, muscle spasm, disability, loss and/or limitation of use of body parts, paresthesia, radiculopathies, numbness, loss of sensation, head injuries, [and] neurological damage;" emotional distress, including "fright and humiliation;" economic injuries, including loss of income, unpaid medical bills, and medical liens; and loss of enjoyment of life. (Id. ¶ 22.)

3. The Complaint asserts the following claims, which Plaintiff groups into two counts,

"Federal Causes of Action" (Count One) and "State Causes of Action" (Count Two):

   a.  Violations of Titles II (public services) and III (public accommodations) of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 et seq. and § 12181 et seq., respectively (Count One);

   b.  Violations of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq. (Count One);

   c.  Violations of the Civil Rights Act, 42 U.S.C. § 1983 ("§ 1983") (Count One);

   d.  Violations of the Pennsylvania Human Relations Act, 43 Pa. Stat. Ann. § 951 et seq. (Count Two);

   e.  Violations of the Pennsylvania Constitution, art. I, §§ 1, 8, 9, and 26 (Count Two); and

   f.  Medical malpractice under Pennsylvania common law;

   g.  Negligence under Pennsylvania common law; and

   h.  Intentional infliction of emotional distress ("IIED") under Pennsylvania common law (Count Two).

(Compl. ¶¶ 23-28.)

4. Plaintiff's Complaint does not specify which of these causes of action pertain to which Defendants. Therefore, I will consider all asserted causes of action as applying to all Defendants.

5. As to relief, Plaintiff seeks "compensatory damages, punitive damages, attorney's fees, costs and litigation expenses, prejudgment interest and delay damages," as well as "all other relief" that this Court may deem just. (Compl. ¶¶ 23-28.)

6. On July 10, 2017, Defendant MHM removed this action to this Court on the basis of federal-question jurisdiction. (Doc. No. 1.)

7. All three Defendants have moved to dismiss for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). Finding that Plaintiff's Complaint generally lacks specificity, I will grant all three motions, and dismiss Plaintiff's Complaint in its entirety. However, Plaintiff will be given leave to file an amended complaint as to some of the dismissed claims.

## LEGAL STANDARD

8. To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The plausibility standard requires more than a "sheer possibility that a defendant has acted unlawfully." Id. To determine the sufficiency of a complaint under Twombly and Iqbal, a court must take the following three steps: (1) the court must "take note of the elements a plaintiff must plead to state a claim;" (2) the court should identify the allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth;" and (3) "where there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Burch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) (alterations and citations omitted).

## DISCUSSION

9. Each Defendant has moved to dismiss all claims against it. The analysis for each cause of action is the same or similar as to each Defendant. Accordingly, the analysis set out below applies to all Defendants, except where specified.

Americans with Disabilities Act (Count One)

10. Title II of the ADA prohibits public entities from denying services or otherwise discriminating against individuals on the basis of disability. 42 U.S.C. § 12132. Likewise, Title III prohibits places of public accommodation from discriminating against individuals or denying them "goods, services, facilities, privileges, advantages, or accommodations" on such basis. § 12182(a).

11. To sustain a claim under Title II, a plaintiff must establish: (1) that he is a qualified individual; (2) that he has a disability; (3) that he was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by such entity; and (4) that such denial or discrimination was by reason of his disability. Herman v. County of New York, 482 F. Supp. 2d 554, 566 (M.D. Pa. 2007) (quoting Bowers v. Nat'l Collegiate Athletics Ass'n, 475 F.3d 524, 553 n.32 (3d Cir. 2007)). The requirements to sustain a claim under Title III are the same, except that the plaintiff must establish that he was denied the benefits of a public accommodation, rather than those of a public service. Bowers v. Nat'l Collegiate Athletics Ass'n, 9 F. Supp. 2d 460, 480 (D.N.J. 1998).

12. Defendants do not dispute that the ADA applies to them or that Plaintiff is entitled to the Act's protections. Rather, Defendants contend that Plaintiff has not alleged facts that, if true, would make it plausible that he was subject to discrimination, or denied services or accommodations, based on his disability.

13. Plaintiff's Complaint alleges that he had a physical disability requiring ambulatory assistance, and that Defendants provided inadequate medical care for that disability— particularly "improper medical treatment, [devices] and medication." (See Compl. ¶¶ 6-7,

10.) Plaintiff's Complaint also alleges that he required "reasonable accommodations," which, according to Plaintiff's Opposition to the City's Motion, Defendants "fail[ed] to provide." (Compl. ¶ 6; Resp., Doc. No. 7, at 7-8.) The Complaint further alleges that Defendants "acted with malice against Plaintiff based on his having a disability." (Id. ¶ 8.)

14. These allegations are insufficient to state a claim under the ADA. First, providing inadequate medical care, even if related to a disability and even if such conduct amounts to negligence, is not actionable discrimination under the ADA. See Iseley v. Beard, 200 F. App'x 137, 142 (3d Cir. 2006) (citing Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996)).

15. Second, while Plaintiff contends that Defendants failed to provide him "reasonable accommodations" for his disability, his Complaint fails to allege specifically what accommodations he requested. Indeed, Plaintiff's Complaint does not allege that he ever requested *any* accommodations, only that he was "in need of . . . reasonable accommodations" generally. To make a claim for failure to accommodate, a plaintiff must either have asked for the accommodation or the need for it must have been obvious. Creel v. Rowan Univ., No. 1:16-cv-2883, 2017 WL 2734709, at *4 (D.N.J. June 26, 2017) (citing Robertson v. Las Animas County Sheriff's Dep't, 500 F.3d 1185, 1197 (10th Cir. 2007)). Because Plaintiff does not specify what accommodations were lacking, and viewing the Complaint in the light most favorable to Plaintiff, the Complaint does not raise an inference that Plaintiff requested and was refused accommodations or that the need for them was obvious. Although Plaintiff does allege that he needed "a wheelchair,

grab bars, and other ambulatory and steadying [devices]" (Compl. ¶ 6), the Complaint does not allege that these items were not provided.

16. Third, Plaintiff's allegation that "Defendants acted with malice against Plaintiff based on his having a disability" is conclusory and unsupported by specific factual allegations from which a plausible inference of discriminatory animus can be drawn. See, e.g., Mitchell v. Walters, No. 2:10-cv-1061, 2010 WL 3614210, at *6 (D.N.J. Sept. 8, 2010) (holding that, to survive a motion to dismiss, a claim of discrimination must be based on more than "suspicion, speculation and conclusory assertions"). Likewise, Plaintiff's conclusory allegation that the Correctional Facility had "a pattern and practice" of denying medical care to inmates with disabilities does not give rise to a plausible inference of discrimination as it is unsupported by any specific examples of similar conduct that would suggest such a pattern or practice. (Compl. ¶ 21.) See, e.g., Mitchell, 2010 WL 3614210, at *6 (finding allegations set out in complaint insufficient to give rise to a plausible claim of discrimination on the basis of race or disability where the complaint "set forth no facts, which taken as true, could establish that Defendants acted with discriminatory intent," such as an allegation that the plaintiff "was treated differently from [other similarly situated persons] who were not African American or not disabled, or that Defendants made remarks revealing a race-based animosity").

17. Because the Complaint does not set out non-conclusory allegations that, if true, make Plaintiff's claim of discrimination based on a disability plausible, Defendants' Motions will be granted as to Plaintiff's ADA claims.

Rehabilitation Act (Count One)

18. Defendants argue that Plaintiff's claims under the Rehabilitation Act should be dismissed for failure to allege that any Defendant received federal funds.

19. To make out a claim under the Rehabilitation Act, a plaintiff must establish that the defendant received federal funds. 29 U.S.C. § 794(a); C.G. v. Pennsylvania Dep't of Educ., 734 F.3d 229, 235 n.10 (3d Cir. 2013). There is no allegation in the Complaint that any Defendant received federal funds. Accordingly, Defendants' Motions will be granted as to Plaintiff's Rehabilitation Act claims.

§ 1983 (Count One)

20. Section 1983 "is a vehicle for imposing liability against anyone who, under color of state law, deprives a person of rights, privileges, or immunities secured by the Constitution and laws." Grammer v. John J. Kane Reg'l Ctrs., 570 F.3d 520, 525 (3d Cir. 2009) (internal quotation marks and citations omitted). A municipality or other corporate entity may be held liable for its employees' violation of a person's civil rights under § 1983, but not on a theory of *respondeat superior*. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-92 (1978). Rather, to make out a claim against such an entity, Monell requires a plaintiff to establish that: (1) the entity had a policy[3] or custom[4] that deprived the plaintiff of his civil rights; (2) the entity acted deliberately and was the moving force behind the deprivation;

---

[3] A "[p]olicy is made when a 'decisionmaker possess[ing] final authority to establish . . . policy with respect to the action' issues an official proclamation, policy, or edict." Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986)).

[4] "A custom is an act 'that has not been formally approved by an appropriate decisionmaker,' but that is 'so widespread as to have the force of law.'" Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003) (quoting Bd. of the Cty. Comm'rs of Bryan Cty., Okl. v. Brown, 520 U.S. 397, 417 (1997)).

and (3) the plaintiff's injuries were caused by the identified policy or custom. Id. at 692-94; Buoniconti v. City of Philadelphia, 148 F. Supp. 3d 425, 436 (E.D. Pa. 2015).

21. Plaintiff has not named any individuals as defendants, but rather has named two corporations and one municipality. Defendants argue that Plaintiff's § 1983 claims should be dismissed for failure to allege facts that, if true, would plausibly support their liability under Monell.[5]

22. The Complaint contains only conclusory allegations that the allegedly wrongful acts were committed pursuant to Defendants' "policies, procedures and customs." (Compl. ¶¶ 12, 18.) Plaintiff does not support these conclusions with any specific factual allegations. Plaintiff does not identify an official policy or describe other incidents which could plausibly suggest an unofficial custom.

23. A complaint asserting a Monell claim based on an alleged policy must, at least, identify the policy. Saleem v. Sch. Dist. of Philadelphia, No. 2:12-cv-03193, 2013 WL 5763206, at *3 (E.D. Pa. Oct. 24, 2013). Plaintiff's conclusory allegation that Defendants "failed to properly hire, train, discipline and supervise their employees" is insufficient to support a wrongful policy, as it is not supported by any specific factual allegations of what training was required or how the provided training was inadequate. (Compl. ¶ 18.) See Brower v. Corizon Health Servs., Inc., No. 2:15-cv-5039, 2016 WL 5166330, at *7 (E.D. Pa. Sept. 20, 2016) (finding an allegation of inadequate training insufficient to support a Monell

---

[5] Defendants also challenge the sufficiency of Plaintiff's alleged violations of federal law on which the § 1983 claims rest—violations of the Fourteenth Amendment's procedural and substantive due process protections and of the Eighth Amendment's prohibition on cruel and unusual punishment under a theory of deliberate indifference to a serious medical need. (Compl. ¶ 17.) Because I will dismiss Plaintiff's § 1983 claims for failing to state a claim for corporate or municipal liability under Monell, I need not address the sufficiency of Plaintiff's Complaint with regard to the alleged underlying civil rights violations.

claim where it was unsupported by allegations "explain[ing] why any training was inadequate or what would have constituted adequate training").

24. Likewise, a complaint alleging a <u>Monell</u> claim based on an alleged unofficial custom must allege specific facts, which, if true, plausibly suggest a widespread practice. <u>See</u> <u>Butler v. City of Philadelphia</u>, No. 2:11-cv-7891, 2013 WL 5842709, at *2 (E.D. Pa. Oct. 31, 2013) (finding bare assertion of a "widespread practice" insufficient where no facts suggested more than a single incident). Plaintiff's Complaint contains no such factual allegations.

25. I find that Plaintiff's Complaint fails to state a claim under <u>Monell</u>. Accordingly, Defendants' Motions will be granted as to Plaintiff's § 1983 claims.

<u>Pennsylvania Human Relations Act (Count Two)</u>

26. Defendants contend that Plaintiff's claims under the Pennsylvania Human Relations Act must be dismissed because Plaintiff does not allege that he is an employee of any Defendant.[6]

27. The Pennsylvania Human Relations Act governs only the relationship between employers and employees. <u>See</u> 43 Pa. Stat. Ann. § 953. Plaintiff does not allege that he was an employee of any Defendant, nor otherwise explain how the Act applies to this case. Accordingly, Defendants' Motions will be granted as to Plaintiff's Human Relations Act claims.

<u>Pennsylvania Constitution (Count Two)</u>

28. While it does not appear that the Pennsylvania Supreme Court has yet addressed the issue, Pennsylvania courts and federal courts in Pennsylvania have consistently held that

---

[6] Defendants also argue that these claims should be dismissed because Plaintiff did not exhaust administrative remedies, a contention I need not reach here.

there is no cause of action for monetary damages under the Pennsylvania Constitution. See Jones v. City of Philadelphia, 890 A.2d 1188, 1208-16 (Pa. Cmwlth. Ct. 2006); Medina v. C&S Wholesale Grocers, Inc., No. 5:17-cv-04547, 2018 WL 1872739, at *2 (E.D. Pa. Apr. 19, 2018) ("Our courts have continuously held there is no private cause of action for suits alleging violations under the Pennsylvania Constitution."). Plaintiff has not asked for non-monetary relief, nor has he alleged the type of ongoing or imminent violation that could entitle him to injunctive relief. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 564 (1992). Accordingly, Defendants' Motions will be granted as to Plaintiff's claims under the Pennsylvania Constitution.

Medical Malpractice (Count Two)

29. Defendants argue that Plaintiff's claims for medical malpractice should be dismissed for failure to timely file a certificate of merit as required for such claims by Pennsylvania law.[7]

30. Under Pennsylvania law, a plaintiff making a claim "based upon an allegation that a licensed professional deviated from an acceptable professional standard" must file a certificate of merit within sixty days of filing the complaint. Pa. R. Civ. P. 1042.3(a). The

---

[7] Defendants also argue that Plaintiff has failed to sufficiently allege the elements of medical malpractice, a contention that I need not reach here as I will dismiss Plaintiff's medical malpractice claim for failure to timely file a certificate of merit.

Additionally, Defendant City of Philadelphia argues that it is immune from medical malpractice suits under the Pennsylvania Tort Claims Act. See 42 Pa. Cons. Stat. § 8542(b) (listing claims for which governmental immunity is waived under the Tort Claims Act); Philadelphia v. Glim, 613 A.2d 613, 616-17 (Pa. Cmwlth. 1992) ("[N]egligence involving medical treatment does not fall within any of the governmental immunity exceptions."). Plaintiff, in response, argues that the Tort Claims Act waives governmental immunity for claims involving "medical treatment." (Resp., Doc. No. 7, at 6.) However, section 8542(b) contains no such waiver. Accordingly, while I will grant Plaintiff leave to seek reinstatement of his medical malpractice claim should he provide grounds for excusing his failure to timely file a certificate of merit, Plaintiff will not be permitted to reinstate his medical malpractice claim against the City.

certificate must state that a licensed professional has given a written statement that the claim is potentially meritorious. Pa. R. Civ. P. 1042.3(a)(1).

31. Although codified as a rule of procedure, the requirement is substantive and so applies in federal court. Booker v. United States, 366 F. App'x 425, 426 (3d Cir. 2010).

32. Failure to timely file a certificate of merit ordinarily warrants dismissal of the plaintiff's medical malpractice claim. Womer v. Hilliker, 908 A.2d 269, 275-76 (Pa. 2006). In rare circumstances, however, a plaintiff who makes a "procedural misstep" in failing to timely file a certificate of merit may seek to have his failure excused if he "substantial[ly] compl[ied]" with the Rule's requirements. Id. (citing Pa. R. Civ. P. 126 ("The court . . . may disregard any error or defect of procedure which does not affect the substantial rights of the parties.")); Booker, 366 F. App'x at 428-29. In order to have his failure excused, a plaintiff must show more than just a lack of prejudice to the opposing party: he must show that he had a "reasonable explanation or legitimate excuse" for missing the Rule's strict deadline. Stroud v. Abington Mem'l Hosp., 546 F. Supp. 2d 238, 252-53 (E.D. Pa. 2008).

33. Plaintiff filed his Complaint in state court on May 24, 2017. (Doc. No. 1-5.) The sixty-day deadline passed on July 23, 2017. Plaintiff filed his three certificates of merit on August 2, 2017, a little more than a week late. (Doc. Nos. 4, 4-1, & 4-2.) Plaintiff does not explain the delay, but merely asserts, incorrectly, that his certificates were timely filed. (Resp., Doc. No. 7, at 5.) Because Plaintiff has not offered a legitimate excuse for failing to timely file his certificates of merit in accordance with Pa. R. Civ. P. 1042.3(a), I cannot find Plaintiff's failure excusable.

34. Accordingly, Defendants' Motions will be granted as to Plaintiff's medical malpractice claims.[8]

Negligence (Count Two)

35. Count Two of Plaintiff's Complaint sets out a list of state law causes of action. Included in this list is a claim for "negligence"—separate from his claim for medical malpractice. Plaintiff's Complaint also alleges that he fell due, in part, to a dangerous condition of the property. (Compl. ¶¶ 7, 27.) Accordingly, while none of Defendants' Motions nor Plaintiff's Responses mention a negligence claim based on a theory of premises liability, Plaintiff's Complaint can be read to include such a claim, the sufficiency of which I will briefly consider here.

36. A claim for premises liability rests on an allegation that a possessor of land breached a duty with respect to a dangerous condition of the property. Carrender v. Fitterer, 469 A.2d 120, 123 (Pa. 1983). Plaintiff alleges that he fell, in part, due to a "dangerous condition[]" at the Correctional Facility, but does not say what or where, specifically, the dangerous condition was. This allegation is too general to put Defendants on notice of the claims against them. Iqbal, 556 U.S. at 679 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

37. Accordingly, all Defendants' Motions will be granted as to Plaintiff's "negligence" claims, to the extent those claims rest on a theory of premises liability.

---

[8] Plaintiff may seek reinstatement of his medical malpractice claims as to Corizon and MHM by presenting evidence sufficient to establish a legitimate excuse for noncompliance that meets the "high bar" required by Pennsylvania law. Stroud, 546 F. Supp. 2d at 253.

Intentional Infliction of Emotional Distress (Count Two)

38. To make out a claim for IIED, a plaintiff must show: (1) that the defendant's conduct was extreme and outrageous, (2) that the defendant acted intentionally or recklessly, (3) that the conduct caused emotional distress, and (4) that the distress was severe. Hoy v. Angelone, 691 A.2d 476, 482 (Pa. Super. Ct. 1997), aff'd, 720 A.2d 745 (Pa. 1998) (citing Restatement (Second) of Torts § 46 (1979)).

39. Defendants argue that Plaintiff's claims for IIED should be dismissed for failure to allege conduct that is extreme and outrageous.[9]

40. While an ultimate determination as to whether conduct is extreme and outrageous is an issue of fact, a court should first decide, as a matter of law, whether the conduct alleged is capable of meeting the standard. L.H. v. Pittston Area Sch. Dist., 130 F. Supp. 3d 918, 927-28 (M.D. Pa. 2015). While courts applying Pennsylvania law have not precisely delineated what conduct may be considered extreme and outrageous, it is clear that conduct meets this definition only in rare cases involving the most "atrocious" and "utterly intolerable" acts. Hoy, 720 A.2d at 754 (quoting Restatement § 46). It is not enough that the conduct is tortious, intentional, or "even criminal." Id. Examples include

---

[9] Defendant Corizon also argues that Plaintiff's IIED claim should be dismissed for failure to allege that his emotional distress manifested in physical injury. (Mot., Doc. No. 3, at 15-18.) Because I will dismiss Plaintiff's IIED claim for failure to sufficiently allege extreme and outrageous conduct, I need not consider whether Pennsylvania law requires emotional distress to manifest physically.

Defendant City of Philadelphia also argues that Plaintiff's IIED claim against it should be dismissed because intentional torts are not viable against public entities under the Tort Claims Act, 42 Pa. Cons. Stat. § 8542(a)(2). (Mot., Doc. No. 5, at 10.) Plaintiff responds that the Tort Claims Act waives governmental immunity for claims involving "deliberate misconduct." (Resp., Doc. No. 7, at 6.) However, the Tort Claims Act contains no such waiver. See 42 Pa. Cons. Stat. § 8542(a)(2). Accordingly, I will not grant leave to amend the IIED claim as to the City.

hiding a body after a fatal car accident, <u>Papieves v. Lawrence</u>, 263 A.2d 118, 121 (Pa. 1970), or fabricating evidence of a homicide, <u>Banyas v. Lower Bucks Hospital</u>, 437 A.2d 1236, 1239 (Pa. Super. Ct. 1981).

41. Courts in this Circuit have held that intentionally withholding medical care from seriously ill inmates may be considered extreme and outrageous. <u>See</u> <u>Robinson v. Corizon Health, Inc.</u>, No. 2:12-cv-1271, 2016 WL 7235314, at *16 (E.D. Pa. Dec. 13, 2016) (defendants concealed that plaintiff had kidney cancer in order to avoid treating him because he was serving a life sentence); <u>Rodriguez v. Smith</u>, No. 2:03-cv-03675, 2005 WL 1484591, at *9 (E.D. Pa. June 21, 2005) (defendants refused to treat plaintiff's brain tumor over several years and verbally abused him when he protested); <u>Miller v. Hoffman</u>, No. 2:97-cv-7987, 1999 WL 415397, at *8-9 (E.D. Pa. June 22, 1999) (prison physician repeatedly blocked attempts by other staff members to treat plaintiff's injured elbow). However, in each of these cases, the plaintiff alleged more than a refusal to treat injuries from a single incident. Rather, the allegations in these cases demonstrate either a prolonged and systematic denial of care, or verbal abuse of a suffering inmate.

42. Here, Plaintiff only alleges that Defendants "refused" medical attention. Plaintiff does not allege that he was verbally abused or allege other facts from which it could plausibly be inferred that the refusal was even malicious rather than merely a misjudgment of Plaintiff's condition. The latter, while potentially tortious in other ways, would not be the sort of deliberate, atrocious conduct necessary to make out a claim for IIED. Nor does the

Complaint allege facts suggestive of a continuous and systematic denial of medical care.[10]

43. Accordingly, all Defendants' Motions will be granted as to Plaintiff's IIED claims.

**WHEREFORE**, it is hereby **ORDERED** that:

- Defendant Corizon's Motion (Doc. No. 3) is **GRANTED**.

- Defendant City of Philadelphia's Motion (Doc. No. 5) is **GRANTED**.

- Defendant MHM's Motion (Doc. No. 8) is **GRANTED**.

- Plaintiff's Complaint is **DISMISSED** in its entirety.

- Plaintiff may file an amended complaint within **thirty (30) days** of the date of this Order to attempt to cure, if possible, the deficiencies outlined herein.[11]

---

[10] In his Opposition to MHM's Motion, Plaintiff sets out additional facts, not contained in the Complaint, about MHM's failure to treat his head injury: that MHM employees refused to examine Plaintiff and only gave him Tylenol, that they assumed he was "faking it," and that Plaintiff repeatedly fell and suffered multiple head injuries, culminating in a coma, ten days of treatment, neck surgery, and a permanent injury. (Resp., Doc. No. 10, at 1-2.) A motion to dismiss is ordinarily confined to "the complaint, exhibits attached to the complaint and matters of public record." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Because I will grant leave to amend the IIED claim as to Corizon and MHM, Plaintiff will have an opportunity to allege additional facts supporting his claim that the conduct was sufficiently extreme and outrageous to make out a claim for IIED.

[11] In dismissing a complaint for failure to state a claim, a district court should allow the plaintiff to amend his complaint within a set period of time, unless an amendment would be inequitable or futile. Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). Leave to amend is appropriate here, as Plaintiff could conceivably allege additional facts supporting each of his claims—except for: (1) his claims under the Pennsylvania Human Relations Act, (2) his claims for monetary damages under the Pennsylvania Constitution, and (3) his claims for medical malpractice and IIED as to the City. Because any amendment of these claims would be futile, leave to amend them is not appropriate.

**BY THE COURT:**

**/s/ Mitchell S. Goldberg**

_____

**MITCHELL S. GOLDBERG, J.**