IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LESLIE BOYD, | : | |
| Plaintiff | : | Civil Action |
| vs. | : | |
| CITY OF PHILADELPHIA | : | No. 17-3195 |
| and | : | |
| CORIZON HEALTH, INC.; | : | |
| and | : | **AMENDED COMPLAINT** |
| MHM SERVICES, INC.; | : | **With Jury Demand** |
| Defendants | : | |

Plaintiff Leslie Boyd, through the undersigned counsel, Goldfein & Joseph, PC, by way of Amended Complaint, pleads the following.

1. Plaintiff Leslie Boyd is an adult individual residing at 549 East Chelten Street, Philadelphia PA 19144

2. Defendant City of Philadelphia ("COP") is a municipality in the Commonwealth of Pennsylvania, whose office for service of process is City of Philadelphia, Law Department, One Parkway Building, 17th Floor, 1515 Arch Street, Philadelphia, PA 19102. At all relevant times, COP was the owner and operator of Curran-Fromhold Correctional Facility ("CFCF") is a state correctional facility, located at 7901 State Road, Philadelphia PA 19136, and was responsible for managing CFCF and all manner of handling matters and issues there.

3. Defendant Corizon Health, Inc. ("Corizon") is a private, independent for-profit corporation, contracting with COP to provide medical services to inmates at CFCF, with main offices at 103 Powell Court, Brentwood, TN 37027.

4. Defendant MHM Services, Inc. ("MHM") is a private, independent for-profit corporation, contracting with COP to provide mental health services to inmates at CFCF, with main offices at 1593 Spring Hill Road, Suite 600, Vienna, VA 22182.

5. This Court has federal question jurisdiction over this action under title II of the ADA, 42 U.S.C. § 12133, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794a, and 28 U.S.C. §§ 1331 and 1345. The Court may grant the relief sought in this action pursuant to 28 U.S.C. §§ 2201-2202. Venue is proper in this district pursuant to 28 U.S.C. § 1391, because a substantial part of the acts and omissions giving rise to this action occurred in the Eastern District of Pennsylvania, 28 U.S.C. § 1391(b).

6. At all relevant times, Plaintiff was a qualified disabled individual, being both physically and mentally handicapped. He suffered from severe cervical and lumbar spinal compression, stenosis and herniation, so substantial that he suffered from incontinence, cauda equine syndrome, imbalance, vertigo, unbearable pain, and other symptoms. He also suffered from mental health disabilities including but not limited to bipolar disorder. Plaintiff had permanent and serious disabilities and medical conditions, causing him to have difficulty balancing and ambulating, and causing him to be in need of cane, walker, wheelchair, grab bars, lowered bed, padding on floor, accessible jail cell, and other ambulation assistance, balancing and steadying devises and other medical assistance and a handicap accessibility. These physical and mental disabilities caused Plaintiff to be weaker and more vulnerable than the general population and in need of special accommodations as required by the federal Americans With Disabilities Act and the Rehabilitation Act of 1973.

7. In and around January through late March 2016, inside Plaintiff's prison cell at Curran-Fromhold Correctional Facility ("CFCF"), which was owned and operated by COP, and staffed by employees of COP, MHM and Corizon, located at 7901 State Road, Philadelphia PA 19136, Plaintiff suffered multiple falls due to his severe medical conditions and defendants' failure to provide urgently needed, proper, reasonable and necessary medical care, reasonable

accommodations, correct medication, correct durable medical equipment, medical evaluation, referral to medical specialists and testing, and also due to other wrongdoing of defendants. These falls and the lack of proper medical treatment proximately caused plaintiff to suffer serious and permanent head, neck and back injuries, ambulation problems, leg problems, bowel and bladder incontinence, kidney damage, infection, encephalopathy, coma, sepsis, septic shock and other maladies requiring extensive hospitalization, stay in the ICU, acute rehabilitation and surgeries.

8. On numerous occasions, repeatedly, from early January through late March 2016 Plaintiff asked the prison guards and medical staff for medical attention, treatment and referrals and for ambulation and balance assistance devises. Defendants failed to provide proper medical treatment, referrals and equipment in response to these requests, proximately causing severe and permanent injuries to plaintiff as aforesaid, including but not limited to becoming comatose and needing emergency cervical spinal surgery and substantial physical rehabilitation and other medical treatment.

9. Defendants' staff destroyed or otherwise disposed of Plaintiff's paperwork and personal belongings in his prison cell while he was at the hospital. The hospital we was taken to was Torresdale Hospital, 10800 Knights Road, Philadelphia PA 19114.

10. Defendants acted with malice against Plaintiff and discriminated against plaintiff based on his physical and mental disabilities.

11. Said defendants subjected Plaintiff to a state-created danger by creating and/or increasing Plaintiff's vulnerability to a danger, as a disabled individual, and placing Plaintiff at substantial risk of serious, immediate, and proximate harm, which was obvious or known to said defendants. Said defendants moreover acted recklessly in conscious disregard of that risk. Said defendants thereby violated Decedent's substantive due process rights.

12. While Plaintiff was an inmate at CFCF, he received inadequate and improper medical treatment, devises and medication, despite requests for proper medical care. This was the result of the acts and omissions of COP, Corizon and MHM. Said defendants acted with deliberate indifference to a serious medical need and acted recklessly in spite of a known substantial risk of serious harm, unreasonably subjecting Plaintiff to an unreasonably risk of severe injury.

13. The acts and omissions of defendants as averred herein were done with actual malice and constituted willful misconduct.

14. At all relevant times herein, defendants and their employees acted pursuant to policies, procedures, ongoing practices and pervasive customs of defendants in neglecting the ongoing medical needs and emergency medical needs of disabled inmates.

15. The acts and omissions of defendants as averred herein constituted unlawful state action causing deprivation of Plaintiff's civil rights.

16. Attorney's fees and litigation costs are warranted for claims under § 1983, pursuant to 42 USC § 1988, and claims under the ADA and Rehabilitation Act of 1973, pursuant to the applicable statutes therein.

17. Punitive damages are warranted in this case on the grounds that the acts and omissions of defendants were willful, wanton, malicious, deliberate, recklessly indifferent and shocking to the conscience and intolerable in a civilized society.

18. This case, in part, is a Medical-Professional Liability action. A Certificate if Merit was timely filed pursuant to PaRCP 1042.3.

19. The acts and omissions of defendants, as averred herein, constitute cruel and unusual punishment and deprivations of procedural and substantive due process, and deliberate

indifference to serious medical need, and are violative of the Eighth and Fourteenth Amendments to the United States Constitution and the Pennsylvania Constitution, Article I, §§ 1, 8, 9 and 26.

20. The employees of defendants who personally committed the aforementioned acts and omissions were acting under an officially adopted or promulgated policy of defendants, and were acting in accordance with a pervasive custom and/or practice of defendants and committed said acts and omission as a result of defendants' failure to properly hire, train, discipline and supervise their employees.

21. The medical staff at CFCF were agents and/or employees of defendants Corizon and MHM acting in the course and scope of their employment/agency, whereby defendants are vicariously liable under the doctrine of respondeat superior. Defendants are further liable for the staffs' actions on the grounds of negligent hiring, training, supervision and retention.

22. Defendants violated the letter and spirit of the law that, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

23. The mistreatment of Plaintiff by defendants was part of an ongoing pattern and practice of discrimination against those inmates with physical and/or mental disabilities.

24. The wrongful acts and omissions by defendants, as averred above, proximately caused damages to Plaintiff including but not limited to severe and permanent bodily injuries including but not limited to back and neck injuries, muscle spasm, disability, loss and/or limitation of use of body parts, paresthesia, radiculopathies, numbness, loss of sensation, head injuries, neurological damage, emotional distress, fright and humiliation, and financial and economic damages, including loss of income, loss of ability to earn income, payment and/or

obligation to pay medical bills and medical liens, past and future medical bills, past and future loss of earning capacity and income, loss of enjoyment of life, other costs and expenses, and other damages.

COUNT ONE
(ADA and Rehabilitation Act Against City of Philadelphia)

25. Plaintiff repeats all averments in all of the above paragraphs and incorporates same herein as if set forth at length.

26. Defendant COP, as the owner/operator of CFCF prison, is subject to the laws and regulations of Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12131-12134, and Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794, and their implementing regulations.

27. The provisions of the ADA and Rehabilitation Act work together to prohibit all disability discrimination in all of the programs, services, and activities of public entities. In the correctional context, where the public entity has custody of an individual with a disability, such prohibitions also include failing to provide critical healthcare and personal services, necessary consumable medical supplies, durable medical equipment and other disability-related equipment (*e.g.*, wheelchairs, walkers, crutches, and canes), and personal assistance services (e.g., assistance in eating, dressing, bathing, bowel and bladder management, transferring to and from a wheelchair, and maintenance of a cell). See 28 C.F.R. § 35.130(a); see also 28 C.F.R. §§ 42.503, 42.511, 42.520-522 (similar obligations under Section 504).

28. In the correctional context, Title II's nondiscrimination mandate buttresses constitutional guarantees, such as the Eighth Amendment protection against deliberate indifference to a serious medical need. See United States v. Georgia, 546 U.S. 151, 157-58 (2006); Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir. 2000). Other cognizable violations of

the Eighth Amendment may exist where harm "poses an unreasonable risk with respect to an inmate's safety." Rhodan v. Schofield, 2007 U.S. Dist. LEXIS 44593 at *31, No. 1:04-CV-2159-TWT (N.D. Ga. June 18, 2007) (denying summary judgment for defendant on deliberate indifference to inmate's claim for wheelchair). The Eighth Amendment requires that inmates "be furnished with the basic human needs, one of which is reasonable safety." Helling v. McKinney, 509 U.S. 25, 35 (1993).

29. An inmate's inability to safely access sleeping and toilet facilities within his cell is a violation of Eighth Amendment prohibition of cruel and unusual punishment. In the context of physical accessibility, a key component of Title II and Section 504 is the affirmative obligation of program accessibility, *i.e.*, the requirement that all of a public entity's programs, services, and activities be "readily accessible to and usable by individuals with disabilities." See 28 C.F.R. §§ 35.149-151; see also 28 C.F.R. §§ 42.520-522. In the correctional setting, this requirement has, *inter alia*, policy, transportation, housing, bathing, dining and medical components involving all aspects of prison operations that affect inmates, ranging from executive level administration to the daily interactions that correctional officers have with inmates.

30. To aid correctional officials in complying with Title II's and Section 504's requirement to provide accessible inmate housing, the Department published a technical assistance document describing and illustrating the requirements for accessible cells required pursuant to UFAS and the ADA Standards. See U.S. Dep=t of Justice, ADA/Section 504 Design Guide: Accessible Cells in Correctional Facilities (Feb. 2005) (AAccessible Cells Design Guide@), at http://www.ada.gov/publicat.htm#Anchor-ADA-23240. The Accessible Cells Design Guide notes the basic elements of accessibility required under both UFAS and the ADA

Standards. These include, but are not limited to: Bed with clear floor space for a side approach next to the bed for transferring, and bed height should be between 17 and 19 inches; A toilet with a seat height between 17 and 19 inches, its centerline 18 inches from the side wall, with side and rear grab bars 33 to 36 inches from the finished floor, and the side grab bar must be at least 40 inches long and the rear grab bar must be at least 36 inches long; Adequate clear floor space to approach the toilet from a variety of transfer positions (front, diagonal, or side), as different people with disabilities transfer in different manners; Flush controls must be within reach and be operable without tight grasping, twisting, or pinching. Generally, the toilet needs to be placed within a 60-inch-wide by 59-inch deep clear area of the floor; Lavatories must provide burn protection from contact with pipes, faucets must be usable with one loosely closed fist, such as by levers, push-type mechanisms, and U-shaped handles. Lavatories must also have appropriate clearance.

31. Title II of the ADA prohibits the unjustified isolation of persons with disabilities, see 42 U.S.C. § 12132; Olmstead, 527 U.S. 581 (1999), and requires public entities to "administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. § 35.130(d). The Rehabilitation Act similarly prohibits recipients of federal financial assistance from discriminating against individuals with disabilities, and requires that they provide services and supports in the most integrated setting appropriate to the needs of individuals with disabilities. 29 U.S.C. § 794, 45 C.F.R. § 84.4.

32. Plaintiff at all times was an adult individual with a qualified disability causing him to require assisting devices for balance and ambulation including but not limited to wheelchair, walker, cane, grab-bars, medical alerts, bottom bunk, increased monitoring and other

medical assistive devises inside his cell and to take with him outside the cell that would reasonably accommodate his needs caused by his disability.

33. Defendant COP is a "public entity" within the meaning of the ADA, 42 U.S.C. § 12131(1), 28 C.F.R. § 35.104, and is therefore subject to title II of the ADA, 42 U.S.C. § 12131 et seq., and its implementing regulations, 28 C.F.R. Part 35.

34. At all times relevant to this action, defendant COP has been a recipient of Federal financial assistance, and is therefore subject to the Rehabilitation Act, 29 U.S.C. § 794, and its implementing regulations, 45 C.F.R. Part 84.

35. Congress enacted the ADA in 1990 "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities[.]" 42 U.S.C. § 12101(b)(1). It found that "historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem[.]" 42 U.S.C. § 12101(a)(2). The ADA provides that "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

36. Regulations implementing title II of the ADA further prohibit public entities, "directly or through contractual or other arrangements" from utilizing "criteria or methods of administration" that (1) "have the effect of subjecting qualified individuals with disabilities to discrimination" and (2) "have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities[.]" 28 C.F.R. § 35.130(b)(3). Accord 45 C.F.R. § 84.4(b)(4) (Rehabilitation Act).

37. Discrimination on the basis of disability is also prohibited by Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a): "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

38. Plaintiff is a person with disabilities covered by title II of the ADA, and is qualified to receive services in a more integrated setting. 42 U.S.C. §§ 12102, 12131(2)

39. Defendant COP's actions as averred herein constitute discrimination in violation of title II of the ADA, 42 U.S.C. § 12132, and its implementing regulations, 28 C.F.R. Part 35.

40. Prisoners are protected by § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), and by Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131,et seq. The Rehabilitation Act was created to apply to federal executive agencies, including the Bureau of Prisons, and to any program that receives federal funding. The ADA was created to regulate state and local government programs, even those that do not receive federal funding.

41. Defendant, which is a recipient of federal financial assistance, discriminates against "qualified individual[s] with a disability" within the meaning of the Rehabilitation Act by administering programs and services for individuals with disabilities in a manner that denies individuals the opportunity to receive services in the most integrated setting appropriate to their needs. 29 U.S.C. § 794; 45 C.F.R. § 84.4.

42. Plaintiff is a person with disabilities covered by Section 504 of the Rehabilitation Act, and is qualified to receive services in a more integrated setting.

43. Providing services in more integrated settings to persons with disabilities can be accomplished with reasonable modifications to the Defendant's programs and services.

44. Defendant COP failed to provide plaintiff with requested reasonable accommodations to address his disabilities.

45. All conditions precedent to the filing of this claim have occurred or have been performed.

46. At all relevant times, Defendant City of Philadelphia received federal funding and financial assistance and met all criteria for being subject to the terms and conditions of the Rehabilitation Act of 1973, and acted with intent to discriminate and/or in reckless disregard for the rights of the disabled, and accordingly deprived plaintiff services of prison, discriminated against inmates with disabilities; and continue to discriminate against those inmates who are similarly situated.

47. The discrimination occurred on multiple occasions from early January to late March 2016 inside the CFCF prison owned and operated by COP.

48. Defendant COP violated the ADA and Rehabilitation Act by failing to provide reasonable accommodations to plaintiff after plaintiff requested same, including but not limited to: providing full and equal access to medical care and treatment inside the prison; plaintiff's physical condition made it more difficult for plaintiff to ambulate distances and to travel to the medical infirmary inside the prison and to medical facilities outside the prison: defendant COP did not provide reasonable assistance and accommodations to plaintiff to transport plaintiff for medical treatment inside and outside the prison;

49. Defendant COP also refused to allow plaintiff to receive medical treatment on a number of occasions when plaintiff asked for it because of plaintiff's mental disabilities, i.e., defendant COP refused to take plaintiff's request for medical attention seriously because of COP's perception of plaintiff as bipolar.

50. Plaintiff requested reasonable accommodations of Defendant COP on numerous occasions in January to March 2016 including but not limited to an accessible jail cell, assistance by prison guards in activities of daily living, provision of cane, walker and wheelchair, low bed, bedrails, padded floor, high toilet seat, grab bars and other modifications of the jail cell to make it both reasonable accessible and safe for plaintiff to live in. Defendant COP refused, denied and otherwise failed to provide these requested accommodations.

51. The failure to provide the requested reasonable accommodations proximately caused plaintiff to suffer inconvenience, distress and pain as well as falls and serious and permanent bodily injuries; plaintiff was caused to sit and lie in his own bodily excretions and suffered other similar humiliations and discomforts, leading to infections and eventually coma and hospitalization.

52. Plaintiff asked for physical assistance from the COP prison guards many times and was refused, causing him to suffer terrible pain and distress; these requests included help up from floor, help onto and off of bed and toilet, help with dressing, help with transport to the medical infirmary, etc.

53. Defendant COP's discrimination against plaintiff in violation of the ADA and Rehabilitation Act was intentional, giving rise to plaintiff's right to re3cover compensatory damages in this lawsuit: Defendant COP was deliberately indifferent to plaintiff's rights as a qualified disabled person; the violations of rights under the ADA and Rehabilitation Act were so clear and obvious that discriminatory intent can be discerned therefrom.

54. Due to defendants' aforementioned wrongful acts and omissions, defendants are liable to Plaintiff under Title II of the Americans With Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701.

55. The aforementioned violations of Plaintiff's rights under federal law directly and proximately resulted in actual damages to Plaintiff, as averred specifically above.

WHEREFORE, Plaintiff demands monetary judgment against Defendant City of Philadelphia for compensatory damages, punitive damages, attorney's fees, costs and litigation expenses, prejudgment interest and delay damages;

AND MOREOVER, Plaintiff further demands judgment against Defendant City of Philadelphia for declaratory and injunctive relief as follows: (a) Declaring that Defendant has violated title II of the ADA, 42 U.S.C. § 12131 et seq., and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; (b) Issuing a declaratory judgment declaring that Defendant has violated title II of the ADA and Section 504 of the Rehabilitation Act by failing to make reasonable modifications to services, programs, and supports for persons with disabilities residing in, and at risk of entry into, Philadelphia Prison System to enable them to receive services in the most integrated setting appropriate to their needs; (c) Enjoining Defendant from failing to provide appropriate, integrated community services and supports to persons with disabilities residing in, and at risk of entry into, the Philadelphia Prison System; and/or discriminating against persons with disabilities residing in, and at risk of entry into, Philadelphia Prison System by failing to provide services and supports in the most integrated setting appropriate to their needs; (d) Awarding compensatory damages, punitive damages, attorney's fees, costs of litigation, prejudgment interest and other monetary damages in favor of plaintiff and against defendant; and (e) Order such other appropriate relief as the interests of justice may require.

COUNT TWO
(Section 1983 and Intentional Infliction of Emotional Distress Against City of Philadelphia)

56. Plaintiff repeats all averments in all of the above paragraphs and incorporates same herein as if set forth at length.

57. Defendant COP's prison guards' refusal to provide assistance to plaintiff inside his cell, refusal to provide an accessible cell and modifications to make the cell accessible, and refusal to transport plaintiff to the infirmary for requested medical treatment, and refusal to provide plaintiff with a needed walker and wheelchair: these refusals by COP's prison guards were done as part of a widespread practice and pervasive custom carried out between 2010 and 2016. This policy, which violates the ADA and Rehabilitation Act, gives rise to a § 1983 claim.

58. There is evidence and information demonstrating that the above refusals, by COP's guards to provide requested reasonable accommodations to plaintiff as a qualified disabled inmate, were part of an ongoing practice and pervasive custom of COP: there were a multitude of complaints written up and otherwise lodged by disabled inmates of the Philadelphia Prison System from 2010 through 2016, complaining of the same types of discrimination plaintiff has averred herein; despite the many complaints, the practice continued and the complaints continued. This policy, which violates the ADA and Rehabilitation Act, gives rise to a § 1983 claim.

59. COP's policy with regard to disabled inmates is to <u>not</u> provide physical therapy and to <u>not</u> refer inmates for wheelchair and walker fittings, when such a request is made. This policy, which violates the ADA and Rehabilitation Act, gives rise to a § 1983 claim.

60. COP's policy with regard to disabled inmates is to <u>not</u> train and supervise prison guards in how to assist disabled inmates in their cells. This policy, which violates the ADA and Rehabilitation Act, gives rise to a § 1983 claim.

61. COP's policy with regard to disabled inmates is to <u>not</u> train prison guards in providing assistance to disabled inmates in obtaining medical treatment from the infirmary. This policy, which violates the ADA and Rehabilitation Act, gives rise to a § 1983 claim.

62. COP's policy with regard to disabled inmates is to <u>not</u> train and supervise prison guards in handling medical requests by mentally disabled inmates, resulting in the guards ignoring the legitimate medical requests of mentally disabled inmates. This policy, which violates the ADA and Rehabilitation Act, gives rise to a § 1983 claim.

63. COP's policies and customs proximately caused its agents and employees at the CFCF prison to ignore plaintiff's serious medical needs: plaintiff request medical attention and demonstrated signs and symptoms of very serious medical problems, particularly in early-late March 2016, when plaintiff showed signs of very serious medical problems, infection, sepsis, kidney failure, spinal cord compression, which required immediate attention by a hospital emergency room or medical specialists, nephrologists, infectious disease specialists, internists, orthopedic surgeons, etc. Despite plaintiff's requests, COP failed to refer plaintiff for needed medical treatment, resulting in plaintiff going into septic shock and going into a coma and needing emergency cervical spinal fusion and a lengthy stay in the ICU.

64. These policies violate the 8th and 14th Amendments to the US Constitution by constituting cruel and unusual punishment and deprivation of substantive due process and equal protection of the laws, by treating the disabled differently from those similarly situated.

65. Due to defendants' aforementioned wrongful acts and omissions, defendants are liable to Plaintiff under 42 USC §983 of violation of plaintiff's rights under the US Constitution, and under Pennsylvania common law for Intentional Infliction of Emotional Distress.

66. The aforementioned violations of Plaintiff's rights under federal law directly and proximately resulted in actual damages to Plaintiff, as averred specifically above.

WHEREFORE, Plaintiff demands judgment against defendants for compensatory damages, punitive damages, attorney's fees, costs and litigation expenses, prejudgment interest and delay damages, and all other relief which this Court deems just.

## COUNT THREE
### (Negligence/Medical Malpractice and § 1983 Against Corizon and MHM)

67. Plaintiff repeats all averments in all of the above paragraphs and incorporates same herein as if set forth at length.

68. As aforesaid, Defendants Corizon and MHM provided medical services to inmates at CFCF in 2016 through contract with COP: Corizon provided physical health services; MHM provided mental health services.

69. Defendants Corizon and MHM personnel/employees saw and treated plaintiff multiple times between January and March 2016 and formed an ongoing doctor-patient relationship with plaintiff. During those occasions, plaintiff showed signs of very serious medical problems and need for emergency treatment by outside medical specialists, including but not limited to: severe cervical and lumbar spinal cord compression, herniation and stenosis placing plaintiff at grave risk of very serious spinal injury, bowel and bladder incontinence and backing up of bodily excretions into kidneys causing kidney failure, urinary tract infections, cauda equine syndrome, altered mental states, slurred speech, chronic and acute back and neck pain, signs of serious infection, sepsis, dizziness, loss of consciousness, vertigo, falling and losing balance; plaintiff made multiple requests for medical attention.

70. Defendants Corizon and MHM failed to properly address these conditions and the signs and symptoms thereof, failed to perform proper testing, failed to make proper referrals to

specialists and to the hospital emergency room, failure to provide back and neck braces, failure to provide durable medical equipment such as walker, wheelchair, grab bars, failure to perform needed surgeries and medical procedures.

71. These failures by Defendants Corizon and MHM proximately caused plaintiff to suffer multiple falls and resulting fall injuries and unchecked infection, leading to sepsis, septic shock, coma, kidney failure, incontinence, pain and distress and other injuries.

72. The care, skill or knowledge exercised or exhibited by Defendants Corizon and MHM in the medical treatment and care of plaintiff at CFCF from January through March 2016 fell outside acceptable professional standards, and deviated from the accepted standard of care, and was a proximate cause in bringing about the aforementioned harm to Plaintiff.

73. Defendants Corizon and MHM are therefore liable to plaintiff under Pennsylvania common law for negligence and medical malpractice.

74. Said conduct by Defendants Corizon and MHM constituted deliberate indifference to a serious medical need, and therefore was a violation of plaintiff's constitutional rights under the 8th and 14th Amendments to the US Constitution, giving rise to a claim under 42 USC § 1983.

75. Said conduct by Defendants Corizon and MHM was outrageous and intolerable in a civilized society, giving rise to a claim for Intentional Infliction of Emotional Distress.

76. The aforementioned violations of Plaintiff's rights directly and proximately resulted in actual damages to Plaintiff, as averred specifically above.

WHEREFORE, Plaintiff demands judgment against defendants for compensatory damages, punitive damages, attorney's fees, litigation costs and expenses, prejudgment interest and delay damages, and all other relief which this Court deems just.

## JURY DEMAND

Plaintiff demands trial by a jury of 12 persons for all issues so triable.

                GOLDFEIN & JOSEPH, PC
                Attorneys for Plaintiff(s)
   By:   /s/ Stephen Cristal
                Stephen H. Cristal, Esquire (Pa ID#95020)
                1880 JFK Blvd., 20th Floor
                Philadelphia, PA 19103
                P: (215) 979-8288, F: (215) 914-6353, E: scristal@goldfeinlaw.com
Dated: June 27, 2018