IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LESLIE BOYD,                                          :
                  Plaintiff          :          Civil Action
      vs.                                        :
CITY OF PHILADELPHIA                        :          No. 17-3195
      and                                       :
CURRAN-FROMHOLD CORRECTIONAL        :
FACILITY;                                            :          RESPONSE TO JOINT DEFENSE
      and                                       :          STATEMENT OF MATERIAL
CORIZON HEALTH, INC.;                      :          FACTS
      and                                       :
MHM SERVICES, INC.;                         :
                  Defendants        :

_____

        Plaintiff Leslie Boyd, through the undersigned attorney, responds to the Joint Defense

Statement of Material Facts as follows[1]:

1.      Admitted.

2.      Denied. MHM is equitably estopped from making this argument at this time; it did not make

the argument in its motion to dismiss under Rule 12(b)(6) and has defended the case as if it were the

correct entity. The information contained in Defense Exhibit B was not provided during discovery.

Plaintiff requests to correct the caption to the extent this argument is maintained. Plaintiff requests

the Court take judicial notice of the numerous lawsuits naming MHM Services Inc. in federal court.

3.      Admitted. However, MHM undeniably maintained a doctor-patient relationship with

plaintiff and had a duty as any medical provider would to provide reasonable care and treatment

including <u>emergency referral</u> to a hospital or medical doctor where there is a life-threatening

emergency.

_____

[1] Admissions are for purposes of the summary judgment motions only. Plaintiff could not respond to the Joint
Defense Statement prefiling because the exhibits and citations were not included at that time.

4.      Denied. The standard of care for all medical providers supersedes whatever the parties might have agreed to; moreover, there is no contract attached, the parole evidence rule prohibits testimony about the details of the contract.

5.      Denied. See #3 and #4 above.

6.      Denied. See #3 and #4 above.

7. – 13.  Admitted.

14.      Partially admitted. Admitted that those words appear in the one entry of the CFCF medical record. There is no basis to infer from this one entry that he actually always hears voices. Moreover, none of defendants' expert witnesses cites this as a basis for any opinion. It is denied that this is material to these motions.

15. – 16.  Admitted.

17. – 19.  Partly admitted; partly denied. These statements' relation to the actual deposition testimony is ambiguous. Plaintiff admits only what the deposition testimony actually says in light of all evidence. Plaintiff did make requests for accommodations for help with balance and ambulation throughout his incarceration. See Exhibit 1.

20. – 22.  Admitted.

23.      Partly admitted; partly denied. Plaintiff admits only what it actually says in the deposition. Plaintiff denies defendant's inferences, paraphrases and generalizations. See Exhibit C, p. 23; Exhibit 1.

24. – 25.  Admitted.

26.      Partly admitted; partly denied. See #17 and #23 above.

27.      Admitted.

28.     Partly admitted. Admitted only that the record states what it states. Plaintiff's requests for accommodations were refused or delayed. Exhibit 1.

29. – 41.  Admitted.

42. – 43.   Denied. Plaintiff made multiple sick calls due to trouble falling and losing balance. See Exhibit C, p. 25.

44. – 49.  Admitted.

50. – 51.  Denied that Plaintiff faked his fall; admitted that defendants accused him of faking and refused to provide proper medical care because of it. In reality, plaintiff fell and suffered injury that went untreated due to defendants' deliberate indifference. Exhibit 1.

52. – 62.  Admitted that the CFCF medical records state that.

63.     Partly admitted; partly denied. Admitted that he did not know exactly when he got the wheelchair. The remainder is denied

64. – 67.  Admitted.

68.     Denied. The records states that a wheelchair was ordered not that it was actually given to him.

69.     Admitted only that on that date the records do not indicate such.

70. – 76.  Admitted.

77.     Admitted only that no intervention was given or deemed needed by the medical staff.

78. – 85.  Admitted.

86.     Admitted only that defendants' medical staff did not notate problems with incontinence and neurological issues. Plaintiff's testimony shows that he did have those problems.

87. – 108.  Admitted.

109.    Denied. Please see the actual testimony.

110.    Denied. Plaintiff's complaints were ignored by the staff. Exhibit 1.

111.    Denied. See Exhibit C, p. 27.

112.    Admitted.

113. – 117.   Denied. This is semantics. Plaintiff's testimony is that his sick call requests were usually delayed even though emergent, and when he finally got in to see the medical staff, his complaints were not treated seriously, or they were totally discounted. See Exhibit C, Exhibit 1.

118 – 122.   Admitted.

123.    Admitted.

124.    Denied. Criticism can be inferred from the findings in those reports.

125. – 126.   Admitted.

127. – 139.   Admitted only that the statements accurately portray the opinions expressed in the reports of defendants' expert witnesses. Denied that those opinions are correct, for the following reasons:

        A.      Dr. Bonner opined that the falls at the prison directly caused serious and ongoing neck and back injuries and aggravations (Exhibit F);

        B.      Dr. Singer also opined that the falls at the prison directly caused serious and ongoing neck and back injuries and aggravations (Exhibit G);

        C.      Corizon's medical negligence regarding the back and neck problems is obvious enough that no expert opinion on standard of care is needed: the CFCF medical records and plaintiff's testimony shows that plaintiff made multiple and repeated complaints and requests to the prison staff and medical staff for help for his constant imbalance, inability to ambulate and falling, and that defendants delayed in treatment or failed to provide treatment altogether: failed to provide

reasonable accommodations or medical devises to prevent falls; failed to provide treatment for his back and neck conditions, leading to more falls and serious injuries;

D.      Corizon's and MHM's negligence is obvious requiring no expert for their failure to address his bladder infection, despite repeated complaints, which due to lack of treatment became septic and put him into the ICU and a ten-day coma and near death; this goes for both Corizon and MHM (Exhibit 2).

E.      MHM's negligence in repeatedly changing his psychotropic medications is obvious and needs no expert as his repeated complaints from it; the change was against his will and without informed consent.

F.      City of Philadelphia's violation of the ADA and Section 504 require no standard of care opinions as they ae direct statutory violations.

G.      The Aria Hospital records show that plaintiff's complaints of infection and other problems requiring emergency hospital and surgical treatment had been going on for weeks before defendants sent him to the hospital, by which time he was already in septic shock and went into a coma and needed emergency cervical spine surgery, and had to be in ICU (Exhibit 2).

H.      Dr. Sklaroff provides a standard of care opinion, finding that defendants' improperly failed to treat plaintiff's cord compression (which required emergency spine surgery) with anything other than pain medications, without sending him for MRIs, X-rays, EMGs, or evaluating him for surgical intervention, etc., increased his risk of harm for serious aggravation of the condition (Exhibit 4).

CRISTAL LAW FIRM LLC

By:     /s/ Stephen Cristal
        Stephen Cristal, Esq. (Atty. ID Nos. 95020(PA)), Attorney for Plaintiff
        100 Springdale Road, #A3-223, Cherry Hill NJ 08009
        Phone: (215) 917-0602, Fax: 215-914-6353, Email: cristallawfirm@aol.com
Dated: January 20, 2020