# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LESLIE BOYD,** : | |
| Plaintiff, : | |
| : | Civil Action |
| v. : | No. 17-3195 |
| : | |
| **CITY OF PHILADELPHIA, et al.,** : | |
| Defendants. : | |

## REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendant, the City of Philadelphia (the "City"), by and through the undersigned counsel, hereby files this reply in support of its motion for summary judgment (the "Motion") [Dkt. 49].

### I. ARGUMENT

#### A. Plaintiff Fails to Establish a Material Issue of Fact as to His Claims Against the City.

As an initial matter, Plaintiff appears to wholly disregard the fact that the record clearly establishes that Corizon and the City are separate entities. All parties agree that the City has contracted with Corizon Health, Inc. ("Corizon") for the provision of general medical services to inmates. Joint Defense Stipulated Stated of Material Facts ("JDSSMF"), at ¶¶8-10; Plaintiff's Response to DSSMF, at ¶¶8-10. Plaintiff attempts to lump the actions of all parties together by making the vague claims. This fatal lack of specificity is present throughout Plaintiff's Opposition.

Moving past this threshold issue, Plaintiff wholly fails to identify record evidence to create a material issue of fact sufficient to defeat the City's Motion. It is appropriate to grant summary judgment where a plaintiff fails to cite in their brief to specific facts in the record to overcome a defendant's factual support. *See Schock v. Baker*, 663 F. App'x 248, 252 (3d Cir. 2016). "Without any specific supportive facts in the record, the plaintiff's bald assertions alone cannot overcome

the defendants' motion for summary judgment." *Harvey v. City of Philadelphia*, 253 F. Supp. 2d 827, 831 (E.D. Pa. 2003) (citing *Petruzzi's IGA Supermarkets, Inc. v. Darling–Delaware Co., Inc.*, 998 F.2d 1224, 1230 (3d Cir.1993) ("Where the movant has produced evidence in support of its motion for summary judgment, the nonmovant cannot rest on the allegations of pleadings and must do more than create some metaphysical doubt."). *See also, Crumpton v. Potter*, 305 F. Supp. 2d 465, 473–74 (E.D. Pa. 2004). Similarly, Plaintiff may not overcome summary judgment by relying upon unsupported allegations in his briefing. *Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109–10 (3d Cir. 1985) (explaining that arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion"). *See also, Tarapchak v. Schuylkill Cty.*, No. 3:13-CV-01895, 2016 WL 3418520, at *7 (M.D. Pa. June 22, 2016).

In Plaintiff's response in opposition to the Motion (the "Reponse") [Dkt. 52], Plaintiff repeatedly states that he made multiple requests for accommodations that went unanswered and fell multiple times as a result. However, Plaintiff fails to specifically point to evidence in the record supporting this, choosing to rely solely on conclusory statements. In particular, while Plaintiff vaguely references his "pleading for a walker and wheelchair," he wholly fails to provide any actual facts to rebut the timeline provided by Defendants in the JDSSMF laying out the sequence of these requests, when and what kind of accommodations he was actually provided, and when any reported falls actually occurred in the context of Plaintiff's medical treatment.

At most, Plaintiff relies upon a passing reference to the 30 pages of medical documents comprising Defendants' Exhibit D to support his claim that there exists documented evidence of multiple unanswered requests amid repeated falls. *See* Response, at p.4. Plaintiff does not identify which specific records within the Exhibit support his assertion, rather leaving it up to the Court to

review the Exhibit in its entirety and ferret out the existence of any potential supporting evidence. However, this Court has recognized that "[i]t is not the district court's obligation to comb the record to make arguments for a party." *Wright v. Dallas Sch. Dist.*, No. 3:05-CV-1197, 2007 WL 9775650, at *7 (M.D. Pa. July 5, 2007), *aff'd sub nom. Wright v. The Dallas Sch. Dist.*, 286 F. App'x 775 (3d Cir. 2008) (quoting *Mitchell v. City of Moore, Oklahoma*, 218 F.3d 1190, 1199 (10th Cir. 2000)).

Moreover, Plaintiff fails to cite to <u>any</u> record evidence supporting that any alleged failure to provide reasonable accommodations was motivated by discrimination based upon Plaintiff's disability. The mere fact that a plaintiff did not receive all appropriate accommodations does not, in itself, support a claim. "The ADA prohibits disability-based discrimination, **not** inadequate treatment for the disability." *Kokinda v. Pennsylvania Dep't of Corr.*, 663 F. App'x 156, 159 (3d Cir. 2016) (internal quotation omitted) (emphasis added).

Plaintiff concedes that he was never denied access to sick call slips or prevented from filing sick call slips and that when he asked for assistance, it was never refused by a corrections officer. DSSMF, at ¶¶113, 115; Response to DSSMF, ¶¶113, 115.[1] The extent of the undisputed assistance provided by corrections officers to Plaintiff is discussed in greater length below in Section I(B). Thus, even if the Court were to determine that Plaintiff had raised a material issue of fact as to whether the City failed to provide him reasonable accommodations, Plaintiff has wholly failed to identify any record evidence supporting any such actions were taken on the basis of or because of Plaintiff's disability.

---

[1] While Plaintiff responded to these paragraphs by denying them, his Response to DSSMF does not identify any record evidence that would contradict the evidence cited by Defendants concerning actions of City Defendants; Plaintiff's response is comprised of general statements concerning medical treatment.

3

### B. The Court Should Not Credit Plaintiff's "Sham Affidavit".

In a thinly veiled attempt to create a material issue of fact sufficient to overcome the City's Motion, Plaintiff produced a "Verified Statement" [Dkt. 53] in support of his Response which contradicts his own prior deposition testimony from nearly five (5) months earlier on August 27, 2019 (the "Deposition Testimony").

Of particular note, Plaintiff states in his Verified Statement that "I was having severe and repetitive bowel and bladder incontinence throughout the weeks leading up to 3/26/16, and I repeatedly made defendants well aware of this fact. Instead of helping me, the prison guards mocked me . . ." Verified Statement at ¶2. Similarly, Plaintiff makes the following, broad allegation in his Verified Statement:

> Prior to my March 2016 fall, I made many medical complaints and requests for accommodations, including grab bars, floor padding, medical equipment, ambulatory assistance devises, modified cell provisions to make my cell handicap accessible to prevent falls and injuries from falls due to my disability; I requested accommodations such as help with dressing, bathing, toileting and transferring in and out of bed and on and off the toilet and leaving and entering my cell. Defendants refused these accommodations; defendants denied me treatment that I needed for my disability – claiming I was faking it. Defendants allowed me to lay in my own urine and feces without help. They ignored my disability. My requests were denied; and on the occasions where I was allowed to go to the medical unit, the medical staff also refused to help me and returned me to my cell without any real medical treatment or examination.

*Id.* at ¶9. Plaintiff goes so far as to specifically state in his Verified Statement that the corrections officers repeatedly refused to provide him assistance: "I asked for physical assistance from the prison guards many times and was refused, causing him to suffer terrible pain and distress; these requests included help up from floor, help onto and off of bed and toilet, help with dressing, help with transport to the medical infirmary, etc." *Id.* at ¶16.

Plaintiff's characterization of the corrections officers' actions in the Verified Statement is wholly contradicted by ample testimony during his prior deposition:

> Q: Did you ever notify any of the guards that you needed a cane?
>
> A: Sure. The guards always helped me get up. The guards knew I needed something.
>
> Q: Whenever you asked for assistance from the guards, did they ever refuse to help you?
>
> A: No.

Deposition of Leslie Boyd ("Plaintiff's Deposition"), attached as Exhibit C to Motion [Dkt. 49-5], at 35:22-36:5;

> Q: Did you ever ask a guard for assistance -- let's say -- getting off the floor and they refused to help you up off the floor?
>
> A: No, the guards always helped me. The guards helped me a lot.

*Id.* at 45:4-9;

> Q: Did you ever feel like it was the prison staff -- as in, the guards or the sergeants -- that were keeping you from getting to see the doctors?
>
> A: No, it was the medical -- I don't know what you want to call them people down there, but it was the people down there in medical.

*Id.* at 43:10-17;

> Q: Did you ever feel like the guards singled you out in a negative way?
>
> A: No. The guards really appreciate me because I started my prison ministry up there. I started prison ministry up there. So they would get me up in the morning.

*Id.* at 51:2-5.

Plaintiff testified during his deposition that when he was refused a wheelchair from medical, one of the other inmates stole one for him and the guards not only declined to discipline them for allegedly stealing a wheelchair, but allowed Plaintiff to keep the wheelchair.:

5

| | |
|---|---|
| Q: | When did you steal the wheelchair? |
| A: | I don't remember, but we stole the wheelchair and the guards said not to take it back, we're going to keep it. |
| Q: | The guards took it back, or they did not? |
| A: | The guards said, "We're not taking it back. You can keep it." |
| Q: | Do you know if that was before or after your first fall? |
| A: | It was during the times I kept falling and I needed something because the prisoners and the guards was helping me get up all the time because I kept falling. |

. . .

| | |
|---|---|
| Q: | Did they write you up or anything for having the wheelchair? |
| A: | No. |

*Id.* at 46:1-14.

Not only did Plaintiff previously testify during his deposition that when he was suffering from incontinence the corrections officers sent his clothes to be washed, but Plaintiff went so far as to credit the corrections officers with getting him to the emergency room when his sick calls were allegedly not being sufficiently responded to:

| | |
|---|---|
| Q: | I want to talk now about -- and you started to tell us about what happened before the coma. And the last thing that you remember is you said you were going down to emergency. What prompted you to go down to emergency? |
| A: | Okay. I'm -- the situation is getting worse. My body is breaking down on me pretty fast; it's getting worse and worse. Instead of me urinating on myself, I started doing number two all over the place. I was stinking up the whole place. The whole place was being stunk up. The guards called me out there and they sent my stuff to be washed and everything. They got -- I was pulling out the sick call to go down to sick call and the guard said, "We're not throwing out no more sick calls. Take his ass right down there now. I'm not even going to call and let them know he's coming |

6

> down." He said, "I'm not even calling down there. Take him down there."

*Id.* at 80:21-81:19.

The above Deposition Testimony completely contradicts Plaintiff's assertions in the Verified Statement that the corrections officers refused to provide Plaintiff physical assistance, believed he was "faking it," "mocked" him, and allowed him to lay in his own urine and feces without help. Verified Statement at ¶¶2, 8, 9, 12, 13, 16. If anything, Plaintiff's Deposition Testimony concerning the corrections officers' behavior wholly undermines Plaintiff's allegation that, to the extent Plaintiff was not provided all requisite reasonable accommodations, it was done so on the basis of his disability. Plaintiff's Deposition Testimony unequivocally credits the corrections officers with always helping Plaintiff, trying to get him reasonable accommodations and medical treatment, and generally showing Plaintiff consistent kindness and, in Plaintiff's own words, appreciation. Plaintiff makes absolutely no effort to explain the startling contradictions between his Deposition Testimony and Verified Statement concerning the corrections officers.

As to Plaintiff's allegations in his Verified Statement concerning what accommodations he asked for and/or received, these also contradict with Plaintiff's Deposition Testimony. Plaintiff testified in his deposition that does not recall when he first asked for a cane (Plaintiff's Dep. at 34:20-24) or first asked for a wheelchair (*id.* at 35:17-19). Plaintiff further testified that he did not recall when he actually got a cane (*id.* at 35:8-9). Plaintiff initially testified during his deposition that he was never given a wheelchair but was given a stolen one at some point (*id.* at 46:1-4); he could not even identify the month when he started using the wheelchair. *Id.* at 46:20-22. When asked during his deposition about medical records in which Plaintiff, himself, indicated that he had a wheelchair at the time of his fall in March but was not using it, Plaintiff was unable to confirm or deny whether he had a wheelchair at that time saying:

7

> Q: Why weren't you using the wheelchair they gave you?
>
> A: I don't think I had the wheelchair at that time.
>
> Q: You started having the wheelchair in February?
>
> A: I don't think I had the wheelchair.
>
> Q: This is March 26th.
>
> A: I don't remember having the wheelchair. I might have been reaching for the wheelchair and lost my balance. I don't know.
>
> Q: You have no memory if the wheelchair was there or not there?
>
> A: That's right, I don't.
>
> Q: If it was there, why didn't you use it?
>
> A: I said I had no recollection if it was there or not. I might have been grabbing it. I don't know.

Plaintiff's Dep. at 128:2-21.

Plaintiff offers no explanation of how he is able to now state with certainty that his requests for ambulatory assistance devises prior to the March 2016 were ignored when he previously could not provide identify the dates on which he received them, or even whether he had received a wheelchair. Verified Statement at ¶9.

When asked during his deposition whether he had requested a walker at any point, Plaintiff responded only that he had asked for a wheelchair. *Id.* at 35:10-11. This conflicts with the Plaintiff's allegation in his Verified Statement that he specifically requested a walker and was denied one. Verified Statement at ¶9. Similarly, when asked during his deposition whether he was able to get from his wheelchair to his bed which was a lower tier bunk, Plaintiff said he was. Plaintiff's Dep. at 121:8-10, 18-21. He never indicated that he had any issue, and even testified

8

that he was given a lower bunk without having to ask due to his prior medical history. *Id.* at 43:20-44:3. This contradicts with his testimony in the Verified Statement that the "height[] of my cot . . . caused me problems getting on and off." Verified Statement at ¶10. Nor did Plaintiff ever testify to or present documented evidence that he ever requested grab bars or padded floors in his cell, as he now claims to have done. *Id.* at ¶¶9-10.

A party may not use a "sham affidavit" to create a factual dispute or defeat an otherwise properly supported motion for summary judgment. *Baer v. Chase*, 392 F.3d 609, 624 (3d Cir.2004); *Paul v. Elec. Ave.*, No. CIV APP 1999/055, 2001 WL 1045098, at *5 (D.V.I. Aug. 29, 2001). The "sham affidavit" doctrine prevents a non-moving party from creating a genuine issue of material fact to defeat summary judgment by "filing an affidavit disputing his or her own sworn testimony without demonstrating a plausible explanation for the conflict." *Baer*, 392 F.3d at 624 (citing *Hackman v. Valley Fair*, 932 F.2d 239, 241 (3d Cir. 1991)). S*ee also*, *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806-07 (1999) (gathering cases where courts rejected party offering self-contradictory evidence in attempts to create genuine issue of material fact). Pursuant to the "sham affidavit" doctrine, "a court may disregard the contradictory affidavit if the affiant's contradictions are unexplained and upon review of the record the court is convinced that there is no independent evidence in the record to bolster the contradictory affidavit." *Jiminez v. All Am. Rathskeller, Inc.*, No. CIV. 4:04-CV-1897, 2006 WL 1548874, at *4 (M.D. Pa. June 2, 2006), *aff'd*, 503 F.3d 247 (3d Cir. 2007) (citing *Baer*, 392 F.3d at 625-26).

For the reasons explained above at length, Plaintiff's Verified Statement is nothing more than a sham affidavit provided in an effort to improperly overcome summary judgment. The Verified Statement should therefore not be considered by the Court as sufficient to create a material issue of fact in light of the City's well-supported Motion. *Id.*

9

### C. The Court Should Not Consider Plaintiff's Belated and Unsworn Expert Report.

The Court should not consider the report of Dr. Robert B. Sklaroff, M.D., F.A.C.P. ("Sklaroff Report"), attached to Plaintiff's Response as Exhibit 4, because it was never produced in discovery and fails to satisfy the requisite standards for an expert report as it is not sworn.

Plaintiff commenced this litigation on July 10, 2017 [Dkt. 1]. On December 14, 2018, the Court issued a scheduling order which set a deadline for Plaintiff's expert report of July 11, 2019. [Dkt. 36]. On July 8, 2019, three (3) days before his expert report deadline, Plaintiff a motion for extension of discovery. [Dkt. 42]. The following day, the Court granted the motion and extended Plaintiff's deadline for expert reports to October 7, 2019. [Dkt. 45]. Despite being granted the extension, Plaintiff failed to produce the Sklaroff Report until it was filed with his Response. *See* Response, at Exhibit 4.

As an initial matter, because Plaintiff failed to timely produce the Sklaroff Report and only produced it as an exhibit to his opposition to Defendants' dispositive motions, the Court should decline to consider the report in adjudicating the motions. *See Astrazeneca AB v. Mut. Pharm. Co.*, 278 F. Supp. 2d 491, 510 (E.D. Pa. 2003), *aff'd sub nom. Astrazeneca AB, Aktiebolaget Hassle, KBI-E, Inc. v. Mut. Pharm. Co.*, 384 F.3d 1333 (Fed. Cir. 2004) (declining to consider expert report in the form of a declaration attached to summary judgment motion because it was produced after the expert report deadline).

Even if the Sklaroff Report had been timely produced, it should still not be considered by the Court as it fails to comport with the necessary requirements of a valid expert report. Federal Rule of Civil Procedure 56(c)(1)(A) provides that a party asserting that a fact is genuinely disputed must support that assertion with an affidavit or declaration. It is well-established within the Third

Circuit that unsworn testimony, including testimony of an "expert" witness, "is not competent to be considered on a motion for summary judgment." *Deuber v. Asbestos Corp. Ltd.*, No. 10-78931, 2012 WL 7761244 (E.D. Pa. Oct. 15, 2012) (quoting *Fowle v. C&C Cola*, 868 F.2d 59, 67 (3d Cir. 1989)) (remaining citations omitted); *see also Bock v. CVS Pharmacy, Inc.*, No. 07-412, 2008 WL 3834266, at *3 (E.D. Pa. 2008) (refusing to consider expert report when the report was not accompanied by a sworn affidavit); *Jackson v. Egypt. Navig. Co.*, 222 F. Supp. 2d 700, 709 (E.D. Pa. 2002) (an unsworn expert report cannot be considered as evidence at the summary judgment stage).

This court has specifically held, on multiple occasions, that this rule applies to expert reports relied upon by plaintiffs in order to defeat a motion for summary judgment. *See, e.g., Burrell v. Minnesota Mining Manuf. Co.*, No. 08-87293, 2011 WL 5458324 (E.D. Pa. June 9, 2011) (explaining that Rule 56 was amended to allow for the use of declarations in lieu of formal affidavits, *but* any such declaration must be specifically attested to under penalty of perjury); *Faddish v. General Electric Co.*, No. 09-70626, 2010 WL 4146108, at *6 (E.D. Pa. Oct. 20, 2010); *Deuber*, 2012 WL 7761244. Here, the Sklaroff Report, while containing various affirmations of truthfulness, is not accompanied by an affidavit or declaration, nor does Sklaroff swear to the veracity of his conclusions under penalty of perjury in the report itself. *See* Response, at Exhibit 4. Accordingly, the Sklaroff Report, or any extrapolations of it by Plaintiff in the Verified Statement, should not be considered by the Court.

## II. CONCLUSION

For the reasons set forth above, the City respectfully requests that this Court grant its Motion and enter judgment in favor of the City, and against Plaintiff, as to all claims.

Date: January 28, 2020									Respectfully submitted,

									/s/ *Meghan E. Claiborne*
									Meghan E. Claiborne
									Deputy City Solicitor
									Pa. Attorney ID No. 315918
									City of Philadelphia Law Department
									1515 Arch Street, 14th Floor
									Philadelphia, PA 19102
									215-683-5447
									meghan.claiborne@phila.gov

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LESLIE BOYD,**<br>　　　　　　**Plaintiff,**<br>　　v.<br>**CITY OF PHILADELPHIA, et al.,**<br>　　　　　　**Defendants.** | Civil Action<br>No. 17-3195 |

## CERTIFICATE OF SERVICE

　　I hereby certify that on the date below, the Defendant's Reply in Support of Motion for Summary Judgment was filed via the Court's electronic filing system and is available for downloading.

Date: January 28, 2020　　　　　　　　/s/ *Meghan E. Claiborne*
　　　　　　　　　　　　　　　　　　　Meghan E. Claiborne
　　　　　　　　　　　　　　　　　　　Deputy City Solicitor
　　　　　　　　　　　　　　　　　　　Pa. Attorney ID No. 315918
　　　　　　　　　　　　　　　　　　　City of Philadelphia Law Department
　　　　　　　　　　　　　　　　　　　1515 Arch Street, 14th Floor
　　　　　　　　　　　　　　　　　　　Philadelphia, PA 19102
　　　　　　　　　　　　　　　　　　　215-683-5447
　　　　　　　　　　　　　　　　　　　meghan.claiborne@phila.gov